UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONES LANG LASALLE AMERICAS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 20 C 3540 |
| DAVID MARTIN, | ) ) Judge Rebecca R. Pallmeyer |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jones Lang LaSalle Americas, Inc. ("JLL") hired Defendant David Martin as a real estate broker in 2018. Martin's compensation package included $1,375,000 in loans that Martin was excused from repaying so long as he remained on the job and did not resign before December 31, 2024 without "Good Reason." Several months later, after JLL acquired another firm and adopted a new plan for distributing brokers' commissions (one Martin believed would be disadvantageous to him), Martin quit. JLL sued him to recover the unpaid balance on Martin's loan, arguing that his justifications for leaving did not amount to "Good Reason." This court agreed and granted summary judgment in favor of JLL and against Martin. (Mem. Op. & Ord. [158].)

Left unresolved is how much, exactly, Martin owes JLL. JLL filed a motion for judgment [168], and the parties have competing calculations of Martin's outstanding balance. As discussed below, the court grants JLL's motion, and determines that the current balance of Martin's loan, plus accrued interest and taxes, amounts to $1,894,491.34 as of the date of this order's filing.

**BACKGROUND**

As the history of this case is familiar to the parties and largely irrelevant to resolution to the pending motion, the court reviews it only briefly.

**I.      Factual Overview**

In 2018, JLL, a real-estate services firm, recruited Martin, a licensed commercial real estate broker, to join its office in Denver. (Mem. Op. and Ord. at 2.) As an incentive for joining

the firm, JLL extended two separate, forgivable loans to Martin, each of them memorialized in a promissory note.

### A. First Promissory Note

The first of these, executed in March of 2018 and dated April 1, 2018, was in the amount of $1,000,000 for a loan of that sum from JLL to Martin. (Apr. 1, 2018 Promissory Note, Ex. 2 to Pl.'s Mot. for Entry of Judgment (hereinafter "First Note") [168-2] at 2.) By its terms, JLL would forgive the loan in increments over six years, reducing Martin's debt by certain percentages per dollar of revenue he earned on commissions. (*Id.*) Until 2022, the loan would be forgiven at 8% per dollar of Martin's commission revenue; for 2023, at 10% per revenue dollar; and for 2024, at 20% per revenue dollar. (*Id.*) The promissory note stated that "[f]orgiveness will be calculated once per calendar year, no later than March 1 of the following year, and/or, in the event of an earlier termination of the Agreement, on the termination date." (*Id.*)

The loan also accrued interest. In this regard, the promissory note stated:

> Holder agrees to make a cash payment to Maker in the gross amount of One Million Dollars ($1,000,000) (the "Principal"). Interest shall accrue annually on the balance of the Debt from the date Holder makes the payment to Maker at the IRS required minimum rate for employee loans (2.57% for March 2018).[1] Interest will be calculated annually and added to the unpaid Principal then outstanding (the "Debt").

(*Id.*)

As for repayment, the Note stated that "[i]f the loan is not forgiven by December 31, 2024, or if Maker resigns without Good Reason . . . before the loan is forgiven in its entirety, the Debt will become due immediately and payable within thirty (30) days after the Due Date." (*Id.*) In the event of failure to pay by that Due Date, the Promissory Note contained a Default provision stating that "any outstanding portion of the Debt shall bear interest at the rate of ten percent (10%) per annum." (*Id.* at 3.) The Note also contained a choice-of-law clause dictating that its provisions were governed by Illinois law. (*Id.*)

---

[1] Each month, the IRS sets minimum interest rates for private loans between employers and employees; the parties are required to use these rates to avoid certain tax liabilities. *See* I.R.C. §§ 7872(c); 1274(d)(1)(B).

2

JLL gave Martin the $1,000,000 loan on May 4, 2018. (David Martin's Resp. to Jones Lang LaSalle Americas, Inc.'s Proposed Form of Judgment (hereinafter "Martin Resp.") [171] at 2.) That month, the IRS required minimum interest rate was 2.69%. (*Id.*; *see also* Rev. Rul. 2018-12, Ex. 5 to Pl.'s Mot. for Entry of Judgment [168-5] at 2.)

### B. Second (Amended) Promissory Note

On October 31, 2018, when one of Martin's fellow brokers resigned from JLL, JLL agreed to extend a further forgivable loan to Martin in the amount of $375,000. The parties executed an Amended Promissory note[2] memorializing this, as follows:

> Maker acknowledges that as part of the consideration for Holder to enter into an Employment Agreement with Maker dated April 16, 2018 . . . Holder agreed to make a cash loan to Maker in the amount of $1,000,000 subject to the conditions of a promissory note . . . which has a current balance of $982,498. . . .
>
> Holder agrees to make a loan to Maker in the gross amount of One Million Three Hundred Seventy-Five Thousand Dollars . . . $1,000,000 of which was paid to Maker in accordance with the terms of the Original Note and $375,000 of which will be paid to Maker pursuant to this Amended Note. Interest shall accrue annually on the balance of the Debt from the date Holder makes the payment to Maker at the IRS required minimum rate for employee loans (2.83% for October 2018). Interest will be calculated annually and added to the unpaid Principal then outstanding . . . .

(Amended Note at 2.) The Amended Note contained the same additional provisions concerning loan forgiveness and choice-of-law. (*See id.* at 2–3.)

JLL advanced the funds for this $375,000 loan to Martin on December 28, 2018. (Martin Resp. at 3.) The IRS required minimum rate was 3.07% at that time. (*Id.*; *see also* Rev. Rul. 2018-30 Tbl. 1, Ex. 7 to Pl.'s Mot. for Entry of Judgment [168-5] at 2.)

### C. Martin's Earnings and Departure

Between April 2018—when Martin began working for JLL—and December 31, 2018, Martin earned $218,775.00 in revenue, which translated into $17,502 (8% of that revenue) in debt forgiveness. (Martin Resp. at 3.) According to what appear to be payment records attached as

---

[2] The document is dated October 31, 2018, and Martin signed it on that day. Paul Washington, JLL's Market Director, signed the Amended Promissory Note on November 12, 2018. (*See* Amended Promissory Note, Ex. 3 to Pl.'s Mot. for Entry of Judgment (hereinafter "Second Note") [168-3] at 4.)

3

exhibits to JLL's motion, JLL forgave Martin $17,818.02 on January 4, 2019 ($17,502 plus $316.02 of what JLL called "Forgiven interest"). (Ex. 10 to JLL Mot. at 2.) In 2019, Martin earned $1,019,817.84 in revenue, making $81,585.43 forgivable for that year (Martin Resp. at 5); JLL forgave him $92,547.33 on January 3, 2020, forgiving him $88,572.00 (instead of $81,585.43) and adding $3,975.33 in forgiven interest.[3] (Ex. 12 to JLL Mot. at 2.) In the first months of 2020, Martin earned $188,439.56 of revenue, making $15,075.16 forgivable for that year (Martin Resp. at 7–8); JLL forgave him $15,813.99 on February 28, 2020, or $15,075.16 plus $738.83 in forgiven interest. (Ex. 14 to JLL Mot. at 2.) Then, on February 29, 2020 (as explained more fully in the court's summary judgment ruling [158]), Martin resigned from JLL. (Martin Resp. at 6.)

## II. Procedural History

In cross-motions for summary judgment, the parties litigated the question of whether Martin had "Good Reason" for his resignation, justifying his demand for forgiveness of JLL's loan. (*See* Def.'s Am. Mot. for Partial Summ. J. and Incorporated Mem. of Law [127]; Pl. Jones Lang LaSalle Americas, Inc.'s Renewed Mot. for Summ. J. [130].) On July 21, 2023, the court ruled in favor of JLL on that issue and directed counsel to submit an agreed form of judgment in amount certain. (Mem. Op. and Ord. at 32; Minute Entry [157].) When the parties failed to reach agreement on "the form of judgment or the amount Martin owes to JLL," the court directed JLL to submit a proposed form of judgment limited to amounts Martin owed under the loan—excluding any cost of collecting on the note or for attorney fees—and directed Martin to respond. (Mot. for Entry of J. [162] at 1; Minute Entry [165].)[4]

---

[3] The parties do not explain why it appears that JLL forgave more of Martin's debt each year—either in its calculation of the principal to forgive or in its addition of forgiven interest—than was strictly necessary under the contract.

[4] The court resolved to postpone determination of the other costs and attorney fees Martin owes until its entry of judgment for damages. (*Id.*)

4

JLL contends Martin owed $1,834,606.17 at the time of filing, with additional interest accruing daily until Martin repaid the debt.[5] (Def.'s Mot. for Entry of Judgment (hereinafter "JLL Mot.") [168] at 7.) In his response, Martin disputed certain of JLL's calculations and argued that he owed $1,785,339.72 as of the filing date. (Martin Resp. at 11.) Both parties submitted spreadsheets, and JLL sought and received leave to submit a further reply. (Jones Lang LaSalle Americas, Inc.'s Mot. for Leave to File a Reply in Supp. of its Mot. for Entry of J., *Instanter* (hereinafter "JLL Leave Mot.") [172]; Ex. 1 to JLL Leave Mot. (hereinafter "JLL Reply") [172-1].)

## DISCUSSION

The parties' central dispute relates to their competing interpretations of language in the First and Amended Promissory Notes. As explained here, the court concludes JLL has the best of the arguments, and therefore adopts JLL's accounting of Martin's debt.

**I.    Legal Standard**

Illinois law governs this dispute. (*See* First Note at 3; Amended Note at 3.) In Illinois, ambiguities in a contract "must be resolved against the drafter of the disputed provision." *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) (quoting *Dowd & Dowd, Ltd. v. Gleason,* 181 Ill. 2d 460, 693 N.E.2d 358, 368 (1998)). To determine whether ambiguities exist, Illinois courts look to the contract's four corners and, "if the language of a contract appears to admit of only one interpretation, the case is indeed over." *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) (quoting *AM Int'l Inc. v. Graphic Mgmt. Assocs., Inc.*, 44 F.3d 572, 574 (7th Cir. 1995)). Importantly, however, a contract is not ambiguous "simply because the parties do not agree on the meaning of its terms." *Bourke*, 159 F.3d at 1036 (quoting *Flora Bank & Trust v. Czyzewski*, 222 Ill. App. 3d 382, 583 N.E.2d 720, 725 (5th Dist. 1991)). In other words, if "one interpretation [of disputed language in a contract] is reasonable and the other is not, there is no ambiguity . . . ." *Bourke*, 159 F.3d at 1037. Finally, if a contract's language is ambiguous,

---

[5] By JLL's calculations, by the end of 2023, Martin's Debt was $1,881,091.72; and in 2024, his debt would grow each day by $515.37.

5

the court may "construe [it] against the drafter or . . . clear [it] up by appeal to extrinsic evidence." *Id.* at 1039.

## II. Applicable Interest Rate

The most significant dispute between the parties is the applicable interest rate on Martin's loans. Both the First and Amended Notes set interest at "the IRS required minimum rate for employee loans," which refers to the annual Applicable Federal Rate (AFR) for mid-term annual loans, set each month by the IRS.[6] (*Compare* First Note at 2 (calling the Minimum Rate "2.57% for March 2018"), *with* Rev. Rul. 2018-06, 2018-10 I.R.B. 388 tbl.1, https://www.irs.gov/pub/irs-irbs/irb18-10.pdf#page=5 (listing the March 2018 AFR for mid-term loans compounding annually as 2.57%).) The parties do not dispute the source of the interest rate, but rather which *month's* AFR applies. JLL uses the rate from the month on which the loan was paid, while Martin applies the rate set on the month in which the loan's interest rate was calculated and added to the principal.

In support of that view, Martin focuses on the First and Amended Notes' statement that "[i]nterest will be calculated annually and added to the unpaid Principal". (Martin Resp. at 2–3; *see also* First Note at 2; Amended Note at 2.) Martin reads this language to say that both the interest amount *and* the interest rate are tallied annually and at the same time. Following Martin's logic, the interest rate should have been recalculated each year, when interest was added to the principal, and the interest rate should have been the IRS required minimum rate for the month in which that calculation occurred. For example, if Martin received his first $1,000,000 loan on May 4, 2018, when the Minimum Rate was 2.69%, and interest was calculated on December 31, 2018, when the Minimum Rate was 3.07%, by Martin's logic the loan should have grown by 3.07%

---

[6] The IRS sets different interest rates for short, medium, and long-term loans. Short-term rates apply to loans with terms of 0–3 years; mid-term rates to loans of 3–9 years; and long-term rates to loans with terms over 9 years. I.R.C. § 1274(d)(1)(A). Because Martin's loan term lasted from 2018–2024, the mid-term rate applied.

for those 241 days, as 3.07% was the Minimum Rate at the time the interest on the loan was calculated.[7] Martin offers no extrinsic support for this reading of the contract.

JLL argues the opposite view. It points out that both the First and Amended Notes explicitly state that "[i]nterest shall accrue annually on the balance of the Debt *from the date [JLL] makes the payment to [Martin]*"—the italicized clause making clear that interest begins accumulating immediately (and thus presumably at the interest rate knowable and applicable at the time). (JLL Reply at 4 (emphasis in original) (quoting First & Amended Notes at 2).) JLL also points to Section 7872 of the Internal Revenue Code, which "appl[ies] to . . . [a]ny below-market loan directly or indirectly between . . . an employer and an employee." I.R.C. § 7872(c)(1).[8] Section 7872 goes on to state that for term loans, "the applicable Federal rate shall be the applicable Federal rate in effect under section 1274(d) (as of the day on which the loan was made), compounded semiannually." 26 U.S.C.A. § 7872(f)(2)(B). JLL argues that because the First and Amended Notes both incorporate the AFR for mid-term (3–9-year) loans, and the Internal Revenue Code defines the AFR as being the rate "in effect . . . as of the day on which the loan was made," Martin's debt accumulated at the AFR in effect on the month in which JLL paid him. (*See* JLL Reply at 4.) As final support for its position, JLL cites the only case that, to this court's knowledge, has considered the matter. *See Drapkin v. Mjalli*, No. 1:19-CV-175, 2020 WL 2737036 (M.D.N.C. May 26, 2020). The *Drapkin* court rejected the defendant's argument that a contract requiring him to repay a loan over ten years at "the lowest applicable federal rate" was ambiguous. *Id.* at *5. In finding the contract unambiguous, the court cited to I.R.C. § 7872 and applied the AFR for long-term (ten-or-more-year) loans as of the day on which the loan was made. *Id.* (citing I.R.C. §§ 7872(f)(2)(A), 1274(d)).

---

[7] In December 2019 and March 2020, at the time further interest-calculations occurred on Martin's debt, the AFR had dropped to 1.69% and 1.53%, respectively. (Martin Resp. at 5, 7.) For that reason, Martin's method of determining AFR nets a lower debt.

[8] The same Code defines a below-market loan as, "in the case of a term loan, [one in which] the amount loaned exceeds the present value of all payments due under the loan." 26 USCA § 7872(e)(1)(B). The parties do not appear to dispute that this loan, which occurs over a set of years and was anticipated to be forgiven in its entirety, meets this definition.

The court concludes that JLL's interpretation of the First and Amended Notes is correct. For one, it is the most natural reading of the contracts' language, which state that interest begins accruing "from the date" of payment. Moreover, the Notes both explicitly incorporate the AFR, which the Internal Revenue Code defines as the rate in effect on the date of payment. To the extent the Notes are ambiguous on this point—and the court is not convinced that they are—JLL has surfaced language in the Internal Revenue Code and *Drapkin* to clarify their meaning on this score, while Martin has surfaced none to support the opposing view.

In turn, the court concludes that Martin's loans accrued interest at the mid-term, annual AFR in effect on the month in which he was paid. He received his first payment of $1,000,000 on May 4, when the relevant AFR was 2.69%; this portion of the total loan payment thus accrued interest at that rate for at least the months of May through November of 2018. JLL loaned Martin the additional $375,000 on December 28, when the relevant rate was 3.07%; that additional portion of the total thus accrued interest at the later rate.

### III.  Two Separate Loans or One?

A question remains, however, as to whether the $1,000,000 and $375,000 loans accrued interest separately or together after the second payment in December 2018. Martin argues that they accrued together after this date; JLL argues that they accrued separately.[9] In light of the court's conclusion in the prior section, adopting Martin's reading on this question would mean that the entire $1.37 million balance (less forgiveness) accrued interest at the later rate of 3.07%. Adopting JLL's reading would mean that the original $1 million portion of the total continued to accrue interest at the earlier rate of 2.69%, while the $375,000 loan accrued interest at 3.07%.

The court agrees with JLL that the two loans accrued interest separately. The Amended Note reads in relevant part as follows:

---

[9]  Because the court has determined that the applicable interest rate—at least for the $375,000 loan—was the AFR for the month in which JLL paid him (or 3.07%), combining the figures and adding interest to the entire $1,375,000 at once as Martin suggests (and as opposed to accruing 3.07% on the $375,000 and 2.69% on the $1,000,000), would actually increase Martin's debt beyond the sum JLL seeks in its motion.

> Maker acknowledges that . . . . Holder agreed to make a cash loan to Maker in the amount of $1,000,000 subject to the conditions of a promissory note . . . .
>
> Holder agrees to make a loan to Maker in the gross amount of One Million Three Hundred Seventy-Five Thousand Dollars (the "Principal"), $1,000,000 of which was paid to Maker in accordance with the terms of the Original Note and $375,000 of which will be paid to Maker pursuant to this Amended Note. Interest shall accrue annually on the balance of the Debt from the date Holder makes the payment to Maker at the IRS required minimum rate for employee loans (2.83% for October 2018). Interest will be calculated annually and added to the unpaid Principal then outstanding . . . .

(Amended Note at 2.) It is true, as Martin points out, that the Amended Note refers to the sum of both loans as the "Principal." (Martin Resp. at 4–5.) But beyond that, the Amended Note states that the original, $1,000,000 loan was "paid . . . *in accordance with the terms of the Original Note*" and that the $375,000 loan "will be paid . . . *pursuant to this Amended Note*." (Amended Note at 2 (emphasis added).) In other words, the Amended Note differentiates between the two loans and suggests that they be treated differently. While the Amended Note refers to the debt as the sum of both loans, the most reasonable reading of its language supports JLL's view that the loans accrue interest separately. Accordingly, after JLL made both loans, the $1,000,000 loan continued to accrue interest at 2.69% while the $375,000 loan accrued interest at 3.07%.

## IV. Timing of Loan Forgiveness

A final, trivial issue involves whether JLL forgave a portion of Martin's debt in October of 2018 or January of 2019. Recall that Martin made $218,775.00 in revenue for JLL between his hiring in April 2018 and December 31, 2018. (Martin Resp. at 3–4.) By the terms of the two notes, he should have been forgiven 8% of that sum—$17,502.00—that first year.

The Amended Note, which was executed well before year's end (on October 31, 2018), states that the $1,000,000 loan "has a current balance of $982,498." (Amended Note at 2.) As Martin points out in his Response, $982,498 is equivalent to $1,000,000 minus the loan forgiveness for 2018 ($17,502.00). (*See* Martin Resp. at 2 n.1.) Martin reads this to suggest that JLL forgave that portion of the original loan on October 31 when it executed the Amended Note. He then calculates interest accruing separately, on $1,000,000 from May 4 to October 31, 2018, and on $982,498 from November 1 to December 31, 2018. (*See id.* at 2–3 nn. 2–4.)

9

Contrarily, JLL argues that the two notes "both clearly indicate that forgiveness is calculated and applied once per calendar year, during the year after that in which the attributable revenue was collected." (JLL Reply at 2.) JLL refers to the "Debt Forgiveness" sections of the First and Amended Notes, which state that "[f]orgiveness will be calculated once per calendar year, no later than March 1 of the following year . . . ." (First Note at 2; Amended Note at 2.) And, though JLL does not cite to them in its Reply, its reading is consistent with payment records it attached to its Motion which state that JLL forgave Martin $17,818.02 ($17,552 + $316.02 of forgiven interest) on January 4, 2019. (Ex. 10 to JLL Mot. at 2.)

JLL's reading is the only reasonable one. Given that the Amended Note explicitly directs that a portion be forgiven once each year, it is not at all clear why, before year's end, JLL would forgive Martin's debt by way of oblique reference in an otherwise unrelated promissory note. All told, this dispute nets a remarkably small difference of about $75 for that first year's interest. (*See* JLL Reply at 2 n.1 (doing calculation and arriving at $76.68)).[10] Though it is at least odd that the Amended Note appears to incorporate the forgivable amount of revenue—which, even more puzzlingly, appears not to have grown between October and December of that year[11]—the contract and extrinsic evidence make clear that the forgiveness would occur at or soon after year's end, and that in Martin's case that forgiveness occurred on January 4, 2019. (Ex. 10 to JLL Mot. at 2.)

---

[10] By its own calculation, the court arrived at a $78.68 difference. To briefly explain, from May 4 to December 31 is 241 days. Assuming forgiveness occurred after year's end, the $1,000,000 principal accrued 2.69% of interest for those 241 days; the amount of interest would be: $1,000,000 * (2.69% / 365)*241, or $17,761.37. By Martin's calculation, the $1,000,000 loan accrued interest from May 4 to October 31, and then $982,552 accrued interest from November 1 to December 31. This would amount to: $1,000,000 * (2.69% / 365)*180 for May 4 to October 31, plus $982,552 * (2.69% / 365)*61; the total amount of interest would be 17,682.69. The two calculations are $78.68 apart.

[11] One possible explanation is that JLL incorporated money Martin earned between November and December of 2018 into its forgiveness payment for his 2019 earnings. This would explain the higher amount—$88,572 versus the $81,585.43 he was ostensibly owed—JLL listed as his forgivable principal in 2019. (*See* Ex. 12 to JLL Mot. at 2.) Even in this case, however, Exhibit 10 of JLL's Motion makes clear that, formally, Martin's debt was forgiven in January 2019, not October 2018.

Accordingly, the court agrees with JLL that from May 4 to December 31, the $1,000,000 loan steadily accrued interest; JLL did not forgive the loan in October merely because the Amended Note, drafted that month, referred to the "current balance" of the loan as being $982,498.

## V.     Debt Calculation

The court calculates Martin's debt with the above findings in mind.[12] Helpfully, both parties submitted spreadsheets detailing their math, and, because the court agrees with JLL's approach to the calculation, the spreadsheet JLL submitted by email is attached in table form here, as Appendix A. That spreadsheet calculates the debt separately for each installment of the loan and with the appropriate interest rates (as discussed above). The sum of Martin's debt as of the September 2023 date of filing, as the spreadsheet shows, was $1,834,606.17. (*See* Appendix A.)

To calculate the debt's current value, the court must account for the passage of time since JLL filed its motion. To do this, the court takes the debt's value as of the end of the last year for which a complete calculation was available (in other words, the value on December 31, 2022,

---

[12] JLL points out three other small issues in Martin's brief that warrant only brief discussion. First, Martin fails to calculate interest of 366 days in 2020, which was a leap year. (JLL Reply at 3 n.4.) Second, Martin calculates interest separately for two days in March 2020, but never explains why. (*Id.* at 3 n.3.) On both of these scores, the resulting differences in debt are minor and, without knowing Martin's reasoning, the court cannot determine whether his reasoning is defensible.

Third and finally, JLL points out in its Reply that Martin, beyond using incorrect interest rates and improperly combining the two loans into one, makes numerous arithmetical errors in his calculations of the debt. For example, Martin forgets to add $13,956.16 of interest when determining his debt at the end of 2018. (JLL Reply at 3.) Martin argues that he owed $1,362,317.49 at the end of 2018, which he claims is the sum of the following figures (which represent his calculations of interest accrued over various periods between May and December of 2018, and the principal): "$982,498.00 + $13,956.16 + $5,040.89 + $375,000.00 + $94.62 = $1,362,317.49." (Martin Resp. at 4 n.5.) But, as JLL points out, adding those numbers together actually nets $1,376,589.67. (JLL Reply at 3.) Similarly, JLL points out that Martin fails to add $4,875.87 of interest he "concedes had accrued" in 2019, and accidentally "deducts $107.06 of interest from his 2019 Debt instead of adding it to his total Debt." (*Id.* (comparing Martin Resp. at 7 (noting the $4,875.87 accrual) with Martin Resp. at 8 n.11 (omitting that figure when calculating debt from that year and subtracting rather than adding $107.06 from the total)).)

The court concludes that JLL is correct with respect to these errors as well, and that correcting them would bring the debt, as Martin has argued it should be calculated, up by $17,473.94, closer to JLL's proposed figure. Because the court has adopted JLL's calculations, however, Martin's math errors are immaterial.

11

which the Appendix shows was $1,710,083.38), and adds a year's worth of interest at the default rate of 10%, netting a total of $1,881,091.72 in debt by January 1, 2024. Then, for each day of 2024, that debt accrues $515.37.[13] This Order is dated January 26, 2024, twenty-six days into the year, making Martin's debt a total of $ 1,894,491.34.[14]

## **CONCLUSION**

For the foregoing reasons, the court grants JLL's motion for entry of judgment [162] and enters judgment against Martin in the amount of $1,894,491.34.

ENTER:

Dated: January 26, 2024

REBECCA R. PALLMEYER
United States District Judge

---

[13] That sum is produced by dividing the 10% interest on the principal over the course of all 365 days of the year, resulting in the calculation: $1,881,091.72 * (0.1/365).

[14] Stated as an equation: $1,881,091.72 + $515.37*26.

12

**APPENDIX A**

| Event | AFR | First Funding | Second Funding | Totals |
|---|---|---|---|---|
| Funding 5/4/2018 | 2.69% | $ 1,000,000.00 | | $ 1,000,000.00 |
| Funding 12/28/2018 | 3.07% | | $ 375,000.00 | $ 375,000.00 |
| 2018 Accrued Interest | | $ 17,761.37 | $ 94.62 | $ 17,855.99 |
| 2018 forgiveness | | $ 17,818.02 | | $ 17,818.02 |
| Balance 12/31/2018 | | $ 999,943.35 | $ 375,094.62 | $ 1,375,037.97 |
| 2019 Accrued Interest | | $ 26,898.48 | $ 11,515.40 | $ 38,413.88 |
| 2019 forgiveness | | $ 92,547.33 | | $ 92,547.33 |
| Balance 12/31/2019 | | $ 934,294.50 | $ 386,610.03 | $ 1,320,904.52 |
| 2020 Accrued interest through 3/30/2020 | | $ 6,180.13 | $ 2,918.59 | $ 9,098.72 |
| 2020 Forgiveness | | $ 15,813.99 | | $ 15,813.99 |
| Outstanding Balance @ 3/30/20 | | $ 924,660.63 | $ 389,528.62 | $ 1,314,189.25 |
| Default Interest 2020 | | | | $ 99,102.80 |
| Balance 12/31/2020 | | | | $ 1,413,292.05 |
| Default interest 2021 | | | | $ 141,329.20 |
| Balance 12/31/2021 | | | | $ 1,554,621.25 |
| Default interest 2022 | | | | $ 155,462.13 |
| Balance 12/31/2022 | | | | $ 1,710,083.38 |
| Default interest YTD 9/13/23 | | | | $ 119,940.09 |
| Balance 9/13/2023 | | | | $ 1,830,023.47 |
| | | | | |
| Outstanding Taxes | | | | $ 4,582.70 |
| | | | | |
| Total Amount Due to JLL (as of 9/13/2023) | | | | $ 1,834,606.17 |